UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| COY DANIELS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 2:19-cv-00018-JMS-MJD |
| ) | |
| WARDEN, ) | |
| ) | |
| Respondent. ) | |

**Order Denying 28 U.S.C. § 2254 Petition for a Writ of Habeas Corpus**

Petitioner Coy Daniels is in state custody following a conviction for his role in a 2007 robbery and murder in Indianapolis. Mr. Daniels filed this petition for a writ of habeas corpus alleging that the prosecutor committed misconduct during closing argument, the evidence against him was insufficient, and his trial counsel was ineffective.

**I. Background**

The Indiana Court of Appeals summarized the evidence against Mr. Daniels:

On November 17, 2007, James Compton met with Daniels, Sam Fancher, Lawaine Smith, and Larry Neal. They were driving a dark blue Dodge Magnum, which Paul Jordan had rented and loaned to Daniels. Compton had previously seen Daniels and Jordan in the same vehicle. Daniels told Compton that he "had a lick," which means that he had a robbery or burglary he wanted to carry out. Daniels asked Compton if he had any guns. During the conversation, Compton saw that Daniels had three 0.40 caliber Glocks and a "mini AKA" in the car. Compton heard Lawaine talking to his father, Lanthern Smith, on the cell phone about the robbery and heard that Lanthern was supposed to open the door of the place to be robbed for them. Lawaine asked Lanthern if they had "any guns on them," and Lanthern responded that they did not.

Curtis Williams also saw Daniels, Neal, Fancher, and Lawaine in a dark-colored Magnum. Daniels was wearing a leather coat with fur around the collar and had a 0.40 caliber gun. Williams heard them say that they were waiting on Compton and saw Compton get in the Magnum.

On the same day, Melvin Fitzgerald had agreed to host a dice game at his residence on West 10th Street in Indianapolis. Approximately nine men participated in the dice game, including Arnold Fitzgerald, Lanthern, and Terrance Williams. Arnold

1

>was Melvin's nephew and had lost his right eye. Melvin did not allow the participants to have weapons, and he patted everyone down. The dice game involved about $1,000 total. During the game, Melvin saw Lanthern talking on his cell phone. Shortly thereafter, Lanthern told Melvin that he needed to talk to him, and they went into Melvin's bedroom. Melvin heard a knock on the door and told Lanthern to answer the door. Melvin heard "a big commotion" and shooting, and everyone "scattered." Participants in the dice game tried to hide or escape the residence.
>
>Williams was playing dice with the other men when he heard a knock on the door. Lanthern answered the door, and Williams saw a man wearing a jacket with fur on it come into the house. The man was holding a gun, and Williams heard someone say, "freeze." Williams heard gun shots and was shot in the right hand. Everyone started running, and Williams, his brother, and Arnold ran toward the basement. Williams and his brother went into the basement, while Arnold tried to run out the back door. Williams later saw Arnold on the floor near the back door, and Arnold was not moving. Arnold died of a gunshot wound to his back that damaged his heart. A 0.40 caliber bullet was removed from his chest. Williams later identified Neal in a photo array as a person involved in the shooting.
>
>Melvin's neighbor heard shots fired, called 911, saw a "black Magnum" sitting on 10th Street, and saw the vehicle drive away.
>
>Later that day, Compton heard Lawaine, Fancher, and Daniels arguing about who shot first. Fancher was making fun of Daniels for shooting into the basement. They also discussed the money they had taken.
>
>The next day, Williams was at Fancher's residence with several other people. Fancher said, "guess what this motherf\*\*\*er had us do?" Pointing at Lawaine, Fancher said that Lawaine had them "run in the house with about 12 motherf\*\*\*ers in there." Fancher then said that Compton ran back to the car before they walked into the house. Fancher said that a "one-eyed dude kept on moving." They said that Daniels was following men toward the basement, and Daniels said that he fired shots through the basement door. Daniels complained that he could not hear out of one of his ears due to the shooting. The men argued about which one of them shot first. They also said that they had picked up money off the floor at Melvin's house.

*Daniels v. State*, 2010 WL 3722642, at *1−2 (Ind. Ct. App. Sept. 24, 2010) ("*Daniels I*").

Mr. Daniels's first jury trial resulted in a mistrial, but at his second trial he was convicted of murder, felony murder, robbery, and battery. *Id.* at *2. On direct appeal, Mr. Daniels argued that the prosecutor committed misconduct during closing argument. The court of appeals held that Mr. Daniels waived the claim by not moving for a mistrial as Indiana law requires. *Id.* at *3.

2

Accordingly, the court of appeals reviewed Mr. Daniels's claim only for "fundamental error." *Id.* It found none. *Id.* The court of appeals affirmed, and the Indiana Supreme Court denied leave to transfer. Dkt. 9-2 at 4.

Mr. Daniels filed a pro se state post-conviction petition, which he amended both before and after the appointment of counsel. The amended petition alleged ineffective assistance of trial and appellate counsel. Dkt. 10-8 at 86−91; dkt. 10-10 at 19−21. Following a hearing, the trial court denied post-conviction relief. Dkt. 10-13 at 68−79. The Indiana Court of Appeals affirmed, *Daniels v. State*, 2017 WL 4782770 (Ind. Ct. App. Oct. 24, 2017) ("*Daniels II*"), and the Indiana Supreme Court denied leave to transfer, dkt. 9-8 at 7.

Mr. Daniels filed this 28 U.S.C. § 2254 petition alleging that

(1)   the prosecutor committed misconduct at closing argument;

(2)   he was convicted based on insufficient evidence; and

(3)   trial counsel was ineffective for

   (a)   failing to investigate and present available evidence;

   (b)   failing to request special verdict forms for accomplice or principal liability; failing to object to the merger of murder and felony murder;

   (c)   failing to argue that "Detective Barner, in obtaining an arrest warrant, omitted numerous facts pointing to Daniels's innocence";

   (d)   providing an opening statement that "primed the jury to hear a different version of the incident in reasons why states witnesses would lie";

   (e)   failing to object to allegedly perjured testimony;

   (f)   failing to object based on failure to lay a foundation for conspiracy evidence;

   (g)   failing to move for a mistrial based on the prosecutor's closing argument;

   (h)   allegedly conceding Mr. Daniels's guilt at closing argument; and

      (i)      failing to object when the trial judge elected to sentence him on the murder conviction instead of the felony murder conviction.

Dkt. 2 at 3−6.

## II. Applicable Law

A federal court may grant habeas relief to a person in custody pursuant to the judgment of a state court only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a). Where a state court has adjudicated the merits of a petitioner's claim, a federal court cannot grant habeas relief unless the state court's adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102.

"The decision federal courts look to is the last reasoned state-court decision to decide the merits of the case." *Dassey v. Dittmann*, 877 F.3d 297, 302 (7th Cir. 2017) (en banc). If the last reasoned state court decision did not adjudicate the merits of a claim, or if the plaintiff can overcome § 2254(d)'s bar, federal habeas review of that claim is *de novo*. *Thomas v. Clements*, 789 F.3d 760, 766−68 (7th Cir. 2015).

Section 2254(d) is not the only obstacle to habeas relief. A petitioner may procedurally default his claim by failing to fairly present it "throughout at least one complete round of state-court review, whether on direct appeal of his conviction or in post-conviction proceedings."

4

*Richardson v. Lemke*, 745 F.3d 258, 268 (7th Cir. 2014). Or a claim may be procedurally defaulted if the most recent reasoned state court decision to address the claim rejects it based on "'a state law ground that is both independent of the federal question and adequate to support the judgment.'" *Id.* (quoting *Kaczmarek v. Rednour*, 627 F.3d 586, 591 (7th Cir. 2010)).

### III. Discussion

#### A. Mr. Daniels's Ineffective Assistance and Prosecutorial Misconduct Claims Are Procedurally Defaulted.

##### 1. Ineffective Assistance of Trial Counsel

The Indiana Court of Appeals, which was the last court to issue a reasoned decision on Mr. Daniels's ineffective assistance of counsel claim, rejected the claim as waived because Mr. Daniels "failed to present cogent argument on this issue in his opening brief" and instead attempted to incorporate trial court documents as the basis for his claim. *Daniels II*, 2017 WL 4782770, at *5. Appellate waiver is an independent and adequate state law ground. *Richardson*, 745 F.3d at 270–71. And Indiana courts regularly deem issues waived when appellants fail to brief them and instead attempt to incorporate trial court pleadings. *See*, *e.g.*, *Crittenden v. State*, 2015 WL 3965812, at *14 (Ind. Ct. App. June 30, 2015); *Medley v. Lemmon*, 994 N.E.2d 1177, 1185 n.6 (Ind. Ct. App. 2013); *Bigler v. State*, 732 N.E.2d 191, 196 (Ind. Ct. App. 2000); *Pluard v. Patients Compensation Fund*, 705 N.E.2d 1035, 1038 (Ind. Ct. App. 1999).

Mr. Daniels argues that the Indiana Court of Appeals did not in fact decide his claim based on waiver because the court also addressed the merits of his claim. Dkt. 22 at 2 ("Here the Indiana Court of Appeals did expressly reference . . . the procedural bar at issue. However, the court did not explicitly apply this procedural bar. Rather, it proceeded with the merits of the issues."). But a state court's alternative holding on the merits does not nullify a procedural default. *Moore v. Bryant*, 295 F.3d 771, 775 (7th Cir. 2002); *Bivens v. Rednour*, 428 F. App'x 638, 642 (7th Cir.

2011). And the Indiana Court of Appeals expressly applied the waiver rule before addressing the merits of Mr. Daniels's claim in an alternative holding:

> Attempts to incorporate by reference arguments presented in trial court documents or during a trial court hearing do not comply with the Appellate Rules. Daniels failed to present cogent argument on this issue in his opening brief, resulting in waiver. Waiver notwithstanding, Daniels' arguments, which we decipher as best we can from his appellate briefs, present no grounds for reversal.

*Daniels II*, 2017 WL 4782770, at *5 (citation omitted).

Mr. Daniels's ineffective assistance of trial counsel claim is thus procedurally defaulted. A petitioner can overcome procedural default by showing either "cause and prejudice" to excuse the default or "that the court's failure to consider the defaulted claim would result in a fundamental miscarriage of justice." *McDowell v. Lemke*, 737 F.3d 476, 483 (7th Cir. 2013). But Mr. Daniels asserts neither, and neither is apparent from the record. His ineffective assistance of trial counsel claim is therefore **denied**.

### 2. Prosecutorial Misconduct

The Indiana Court of Appeals, which was the last court to issue a reasoned decision on Mr. Daniels's prosecutorial misconduct claim, rejected the claim as waived because Mr. Daniels failed to move for a mistrial based on the alleged misconduct. *Daniels I*, 2010 WL 3722642, at *3. Mr. Daniels does not dispute that this claim is procedurally defaulted. Instead, he alleges that trial counsel's ineffectiveness excuses the default. Dkt. 22 at 2.

But, as discussed in Section III.A.1 above, Mr. Daniels's ineffective assistance of trial counsel claim is itself defaulted. It thus cannot serve as cause to excuse Mr. Daniels's default of another claim. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). Mr. Daniels's defaulted prosecutorial misconduct claim is therefore **denied**.

### B. The Indiana Court of Appeals Reasonably Concluded that the Prosecution Presented Sufficient Evidence to Convict Mr. Daniels.

Mr. Daniels's only non-defaulted claim is that he was convicted based on insufficient evidence. "[E]vidence is sufficient to support a conviction if, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Coleman v. Johnson*, 566 U.S. 650, 654 (2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Where, as here, a petitioner's *Jackson* claim was adjudicated in state court, "a federal court may only overturn the [state] court's finding of sufficient evidence if it was objectively unreasonable." *Saxon v. Lashbrook*, 873 F.3d 982, 988 (7th Cir. 2017).

On direct appeal, the Indiana Court of Appeals held that the prosecution presented sufficient evidence to convict Mr. Daniels. That holding was reasonable. James Compton testified that on the day of the robbery and murder, Mr. Daniels and his confederates asked Mr. Compton if he had any guns because Mr. Daniels "had a lick." *Daniels I*, 2010 WL 3722642, at *1, *4. Mr. Daniels was in a dark blue Dodge Magnum, and there were four guns visible in the car. *Id.* at *1. Carlos Williams also saw Mr. Daniels in a dark-colored Magnum shortly before the crimes. *Id.* The neighbor who called 911 after the shootings saw a black Magnum drive away from the scene. *Id.* at *2. And both Mr. Compton and Mr. Williams testified that Mr. Daniels discussed the robbery and shootings within a day after they occurred. *Id.*

Mr. Daniels correctly notes that this evidence is mostly circumstantial, but that does not make it insufficient. *United States v. Davis*, 859 F.3d 429, 434 (7th Cir. 2017) (noting "well established" rule "that a jury's verdict may rest solely upon circumstantial evidence"). Because the Indiana Court of Appeals reasonably rejected this claim, habeas relief is **denied**.

### IV. Certificate of Appealability

"A state prisoner whose petition for a writ of habeas corpus is denied by a federal district court does not enjoy an absolute right to appeal." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017). Instead, the prisoner must first obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). Rule 11(a) of the Rules Governing Section 2254 Proceedings in the United States District Courts requires the district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Where, as here, a petitioner's claim is resolved on procedural grounds, a certificate of appealability should issue only if reasonable jurists could disagree about the merits of the underlying constitutional claim and about whether the procedural ruling was correct. *Flores-Ramirez v. Foster*, 811 F.3d 861, 865 (7th Cir. 2016) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Because reasonable jurists would all agree that Mr. Daniels's claims are procedurally defaulted, barred by 28 U.S.C. § 2254(d), or otherwise without merit, no certificate of appealability shall issue.

### V. Conclusion

Mr. Daniels's habeas corpus petition is **denied**, and no certificate of appealability shall issue. Final judgment in accordance with this decision shall issue.

**IT IS SO ORDERED.**

Date: 6/2/2020

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

COY DANIELS
196777
WABASH VALLEY – CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

Jesse R. Drum
INDIANA ATTORNEY GENERAL
jesse.drum@atg.in.gov